IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2016

**ANDREW TAYLOR v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-15-168          Kyle Atkins, Judge**
_____

**No. W2016-00664-CCA-R3-PC  -  Filed December 28, 2016**
_____

The Petitioner, Andrew Taylor, appeals the denial of his petition for post-conviction relief in which he challenged his guilty pleas to carjacking and aggravated robbery and his effective sentence of eight years in prison at eighty-five percent.  On appeal, the Petitioner contends that he was denied his right to the effective assistance of counsel, which rendered his pleas unknowing and involuntary.  We affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

George Morton Googe, District Public Defender, and Susan D. Korsnes, Assistant District Public Defender, Jackson, Tennessee, for the appellant, Andrew Taylor.

Herbert H. Slatery III, Attorney General and Reporter; Katherine Redding, Assistant Attorney General; Jerry Woodall, District Attorney General; and Nina Seiler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Petitioner pled guilty to carjacking and aggravated robbery.  Pursuant to the guilty plea agreement, the trial court sentenced the Petitioner to eight years at thirty percent for the carjacking conviction and to eight years at eighty-five percent for the

-1-

aggravated robbery conviction, to be served concurrently for an effective sentence of eight years at eighty-five percent.

## Guilty Plea Submission Hearing

Although the Petitioner now challenges its accuracy, the Petitioner was arrested and gave the following signed statement to police:

> I met Austin Rogers on Facebook. He started messaging me asking how things were going. He asked me through a message would I be willing to let him give me oral sex for $50.00. I told him no I don't get down like that and he continued to take the price up. He said $100.00, [$]200.00, and all the way up to $350.00 cash he would pay if I let him give me oral sex. He asked for my number and he started calling and texting me which was around the beginning of December. Every time he called he would ask if I was trying to make some money and I would say no or just make an excuse to not meet up.

> On New Year's Eve Austin called me around 6 [p.m.] or 7 [p.m.] and he asked me where I lived. I told him where I lived and he came to my apartment …. Before he even came I knew he only had $50.00 and I wasn't gonna throw my life away for $50.00. I had no intentions of robbing him but I was going through some issues at this time. Austin came to the apartment and I was sitting on the table playing the video game. I asked him if he had the money and he put $50.00 cash on the table. We left and got into his vehicle and he drove to North Park. He parked and turned the car off. We got in the back seat and he reached towards me and tried to touch me. I snapped and pulled out a black pellet handgun that I had in my jacket. Austin put his hands up and said please don't kill me. He took his wallet out and gave me $6.00 cash, a debit card, a bottle of cologne, his cell phone, and his car keys. I gave him the keys back but I didn't want to walk back home so I took the keys. Austin walked towards a black car and I began to drive his car away and I slowed down. I started to get out and run but I knew it was a long way to the apartment so I drove off. I left and drove to an abandoned house off of University Parkway. I walked back to the house where Austin picked me up.

At the plea hearing, the Petitioner affirmed that he understood that he could be prosecuted for perjury; that he could ask the court, prosecution, or trial counsel questions that he might have had during the plea submission hearing; that he did not face "any force or pressure" "to do anything in [the] matter he [did] not wish to do"; that he was not

-2-

under the influence of drugs or alcohol at the time of the plea hearing; that he was entering his plea "freely" and "voluntarily"; that he was satisfied with trial counsel's representation; that he understood and wished to accept the plea agreement; that, by accepting the plea, he was waiving his right to a speedy trial, right to a jury trial, right to confront witnesses, right to present a defense, right to testify, and right to appeal his conviction and sentence; that he had the ability to change his mind at that moment; that the issues of guilt were being decided upon the entry of the plea; that his guilty plea conviction would go on his record; that his guilty plea conviction could increase the penalty for future convictions he may face; and that he understood the crimes with which he was charged. The Petitioner also affirmed that the facts in the indictment were "substantially correct"; that he committed the charged offenses charged against him; and that, as a result of his plea agreement, he was to be sentenced to an effective eight-year sentence to be served at eighty-five percent. The trial court found that the Petitioner entered his plea freely, voluntarily, and intelligently and that the Petitioner was satisfied with the advice of trial counsel.

## Post-Conviction Hearing

The Petitioner's petition for post-conviction relief alleged that counsel was ineffective by failing to investigate the Petitioner's claim that he was only trying to escape the victim's unwanted advances and did not rob the victim, investigate and obtain the cell phone records of the Petitioner and the victim, develop a theory of defense, and challenge the indictment.

The Petitioner testified that prior to entering his guilty plea, he received and reviewed his discovery packet and informed trial counsel that the packet was missing his and the victim's cell phone records. The Petitioner stated that trial counsel then requested a continuance because the discovery packet was missing the cell phone records, and the continuance was granted. The Petitioner said that he did not receive the cell phone records before the next court date and that trial counsel was unable to obtain them as well. He stated that trial counsel did not give a reason for not obtaining the cell phone records, despite the fact that the Petitioner had given his cell phone to the police and had executed a waiver allowing the police to search the contents of his cell phone.

The Petitioner stated that he and trial counsel reviewed the facts upon which his guilty plea was based. He stated he did not understand how he could be charged with aggravated robbery if he "just took a vehicle and not property from [his] victim." The Petitioner testified that trial counsel explained that he was being charged with aggravated robbery not for taking the victim's money or cell phone but for taking the keys to the victim's car from the victim and that if the victim had simply left "the keys inside the ignition, it would have been just carjacking." The Petitioner maintained that he did not

-3-

take the victim's cell phone or fifty dollars. He stated that the victim left the fifty dollars at the apartment where they met and that the victim was using his own cell phone later "that same night." The Petitioner noted that the victim's car keys, cell phone, and debit card were all on the front seat of the vehicle when the Petitioner took the vehicle. He stated that trial counsel did not discuss the location of the victim's belongings with him. The Petitioner testified that he relied on trial counsel's "incorrect legal advice" in entering the guilty pleas.

On cross-examination, the Petitioner conceded that he did not contest the accuracy of a copy of his statement and agreed that trial counsel provided him with a copy of the statement in his discovery. He acknowledged that he "told the investigators that … after displaying a pellet handgun [he] took the victim's cash, debit card, bottle of cologne, [cell phone], car keys, and his car." The Petitioner explained that what the police officer wrote down for his statement was not "very accurate." He conceded, however, that he signed the statement, "attesting that that information [was] correct." He stated that he believed the victim fabricated the charges against him because he denied the victim's sexual advances. The Petitioner testified that he wanted to retrieve the cell phone records to show that the victim had "made sexual advances" towards him and that they had "texted back and forth." He conceded, however, that the victim, in his statement to police, admitted "that he had been texting [the Petitioner] through Facebook and on his phone, wanting sexual favors from [the Petitioner.]" He admitted that a copy of the cell phone records would merely corroborate the victim's own admissions about the sexual advances. The Petitioner recalled the facts of the guilty plea hearing and testified in the affirmative that the transcript of the guilty plea hearing accurately reflected his recollection of the hearing.

On redirect examination, the Petitioner testified that he did not demand the victim's cell phone, the victim's cologne, the victim's debit card, or money from the victim. The Petitioner explained that the victim essentially offered the aforementioned items after he displayed the gun to the victim. He said that the items never left the car and that the victim voluntarily left the vehicle. The Petitioner stated that he "just wanted the attempted sexual act to end."

On re-cross examination, the Petitioner confirmed that he "displayed a pellet handgun to the victim" after which the victim "offered" him the money, a debit card, and a cell phone. He denied taking the items and testified that police found the victim's keys and headphones at the apartment. He confirmed, however, that his statement to the police reflected that he took the money, a debit card, a cell phone, keys, and headphones.

Trial counsel testified that he provided the Petitioner with a copy of his discovery and that he reviewed the discovery with the Petitioner "[s]everal times." He recalled

-4-

discussing the cell phone records with the Petitioner and said he told the Petitioner that the records were irrelevant in light of the Petitioner's statement to the police because "it was uncontroverted that the victim was contacting him for sexual favors." Trial counsel acknowledged that it was his decision to not pursue a cell phone records request. He stated that he discussed "the fact that what [the police] claim[ed] was robbed from the victim was, in fact, left in the vehicle" with the Petitioner. He testified that he would have "pursued" that theory at trial and that he advised the Petitioner on the matter. Trial counsel also testified that he spoke with the Petitioner about the victim's statements and the Petitioner's own statement to the police. Trial counsel stated that it was in his "professional opinion that to go to trial would not be in [the Petitioner's] best interest." Trial counsel testified that he attempted to interview the victim but that the victim refused his request. He acknowledged that he and the Petitioner spoke about the Petitioner's concerns regarding the accuracy of the statement provided to the police. He did not recall the Petitioner expressing concerns or questions about the guilty plea form.

On cross-examination, trial counsel testified that the discovery file did not contain information regarding the location of the victim's cell phone. He also testified that he explained the elements of both of the charges to the Petitioner, including possible defenses and outcomes. Trial counsel testified that the Petitioner did not raise concerns regarding the different aspects of the charges against him.

On re-direct examination, trial counsel testified that he specifically explained to the Petitioner the distinguishing elements of carjacking and aggravated robbery: "the taking from the person in robbery versus just the taking of property." Trial counsel conceded that the location where the victim's property was left was a threshold question as to whether the Petitioner could be convicted of aggravated robbery. He acknowledged that the Petitioner's stated reason for displaying the pellet gun was to avoid the victim's sexual advances and get out of the vehicle.

In its order denying the Petitioner's petition for post-conviction relief, the post-conviction court found that the Petitioner did not present proof to support his contention that he did not take the victim's property. The court noted that the Petitioner, in fact, said otherwise in his statement to the police. The court found that the Petitioner did not present proof on the evidentiary value of the cell phone records for purposes of determining whether the Petitioner took the victim's property. The court noted that the Petitioner conceded that the cell phone records would only serve to corroborate the victim's own admission that he was pursuing the Petitioner for sexual contact.

-5-

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel when trial counsel failed to request the Petitioner's and victim's cell phone records, which the Petitioner contends rendered his guilty plea unknowing and involuntary. While the Petitioner also argued at the hearing that trial counsel failed to investigate his claim that he was only trying to escape the victim's unwanted advances and did not rob the victim, develop a theory of defense, and challenge the indictment, the only issue he presents on appeal is that he received the ineffective assistance of counsel when counsel failed to obtain the cell phone records. The Petitioner contends that the records would have confirmed that the victim's cell phone was left in the front seat of the victim's vehicle, that he, thus, could not be found guilty of aggravated robbery. He claims that absent trial counsel's failure to secure the records, he would have proceeded to trial on the aggravated robbery charge instead of pleading guilty.

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citations omitted). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner,* 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed,

> a court charged with determining whether ... pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (citation omitted).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31). To succeed in a challenge for ineffective assistance of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2)

-6-

prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland,* the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). Courts evaluating the performance of an attorney "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). To fairly assess counsel's conduct every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, conclusions of law are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458. To obtain post-conviction relief, the Petitioner bears the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f).

Here, the Petitioner has failed to carry his burden to establish prejudice. The Petitioner failed to present any evidence that the victim's or his own cell phone records would have demonstrated that the victim's cell phone remained in the front seat of the victim's vehicle. The Petitioner also failed to produce evidence supporting his contention that if the victim's cell phone was in the front seat of the victim's vehicle, then he could not be convicted of aggravated robbery. The Petitioner asserts that he believed the records would prove that the cell phone was in the vehicle. In fact, the post-conviction court found that the Petitioner admitted that the cell phone records "would have merely confirmed" the victim's sexual advances to the Petitioner—nothing more. The post-conviction court also found that the Petitioner did not present any evidence to contradict his own statement to the police about whether he took the victim's property or whether the victim gave him the property.

In other words, even if trial counsel retrieved the cell phone records, the records would have only corroborated the victim's and the Petitioner's statement about their prior relationship and, at best, would have shown that the victim recovered his cell phone at some point during the night of the aggravated robbery and carjacking. Indeed, the cell phone records would have had no effect on the other items that the Petitioner

acknowledged taking from the victim: the victim's six dollars, cologne, debit card, and car keys. Moreover, we note that the Petitioner admitted in his signed statement to the police that the victim "gave" him the aforementioned items while he had a gun drawn on the victim. At the post-conviction hearing, the Petitioner stated that that he "displayed a pellet handgun to the victim" after which the victim "offered" him the money, a debit card, and a cell phone. The Petitioner's testimony is sufficient to establish that he took the victim's property, which satisfies the elements of aggravated robbery. *See* T.C.A. § 39-13-402. Even if trial counsel were deficient in failing to procure the cell phone records, such deficiency did not result in prejudice. We conclude there is no reasonable probability that the Petitioner would not have pled guilty, even if trial counsel had retrieved the cell phone records.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE